John A. PENELLO, Regional Director of the Fifth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Appellee,

v.

RETAIL STORE EMPLOYEES LOCAL UNION NO. 692, RETAIL CLERKS INTERNATIONAL ASSOCIATION, AFL-CIO, Appellant.

No. 8243.

United States Court of Appeals Fourth Circuit.

Argued Jan. 5, 1961.

Decided March 3, 1961.

**510**

Joseph E. Finley, Cleveland, Ohio (Rudd, Ober, Finley & Miller, Cleveland, Ohio and Melvin A. Steinberg, Baltimore, Md., on the brief), for appellant.

Winthrop A. Johns, Associate Gen. Counsel, N. L. R. B., Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Charles B. Slaughter, Atty., N. L. R. B., Washington, D. C., on the brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

PER CURIAM.

The order of the District Court which is brought under review by this appeal enjoined the Union from picketing Irvins,

Inc., a Baltimore chain store concern. The injunction was issued at the instance of the Regional Director of the National Labor Relations Board, whose petition was predicated on a charge filed before the Board by Irvins, Inc. Irvins accused the Union of unfair labor practices in violation of Section 8(b) (7) (B) of the National Labor Relations Act,[1] which prohibits "recognitional" or "organizational" picketing within twelve months after a valid election. The Union denied that its conduct violated this section, contending that the picketing activity complained of is permitted by the statute and is constitutionally protected.

For some months the Union had been conducting an organizing campaign among Irvins' employees, in the course of which it picketed Irvins' stores. Signs carried by the pickets read "Irvins refused to recognize Local 692—Retail Stores Employees Union—R.C.I.A., AFL-CIO." During this period the Union and Irvins accused each other of violations of the Act, but these charges were disposed of by agreement and the employer posted a notice on its premises which declared that it would not interfere with or coerce its employees in the exercise of their right to self organization, to join the Union or exercise any other of their rights. By consent an election was scheduled and held on August 18, 1960. The employees voted against the Union, and no objections to the conduct of the election have been filed.

The mutual recriminations between the employer and the Union and the bitterness of feeling that had existed between them was not, however, dissolved by the election. On the day after the election the Union wrote Irvins that it was withdrawing its demand for recognition, but would continue to picket for the purpose of advising the public of Irvins' prior alleged unfair labor practices.[2] The

1. This section was added to the Act by the amendments contained in Title VII of the Labor-Management Reporting and Disclosure Act of 1959. Public Law 86–257, enacted September 14, 1959, effective November 13, 1959 (73 Stat. 519, 544, 29 U.S.C.A. § 158(b) (7) (B)).

2. The letter said:
   "In view of the results of the National Labor Relations Board election Retail

picketing did continue and Irvins filed a complaint with the Labor Board on August 29, 1960, charging that an object of the post-election picketing was to compel it to recognize, and its employees to accept, the appellant as bargaining agent. The Union denied this allegation and insisted that its post-election picketing was not organizational or recognitional. The distinction the Union sought to make was that the picketing then, contrasted with the pre-election picketing, was solely retaliatory in reaction to the employer's past unfairness, and was not within the ban of the statute.

At the hearing in the District Court the Union stressed the changes made in the signs after the election. Instead of reading, as previously, that Irvins refused to recognize the Union, the legend on the signs read as follows:

This Is A
Non Union Store
Irvins
Opposes Union
For Its Employees
Please
Do Not Patronize
Retail Store Employees Union
Local 692—R.C.I.A., AFL-CIO

The Union also emphasized that it had modified the hours of picketing to coincide with the store closings, withdrawing its pickets about fifteen minutes earlier than previously, and that as a result the pickets no longer came in contact with employees leaving the premises after the close of business. The Union also pointed out that the distribution of leaflets to

employees and to customers had been discontinued.

The placard, it will be noted, told no one that the store had committed unfair labor practices, the Union's present justification for picketing. It only told readers that the Union had not been recognized, which is the purpose the court found the picketing to serve.

After considering the testimony of a Union representative, together with all other circumstances, the District Court concluded that, *prima facie* at least, the post-election picketing was not designed merely to inform the public of Irvins' prior unfair labor practices, but that one of its purposes continued to be, as before the election, to force and require the employees to join the Union, and the employer to recognize it. The Union representative frankly testified that in order to secure the removal of the pickets, not only would Irvins have to call its employees together and assure them that it would not interfere with their "free choice in the selection of a bargaining agent," but that Irvins would also have to allow the appellants to address such meeting of the employees. According to this witness, only on this condition would the pickets be withdrawn.

We do not deem it necessary on this appeal to discuss the applicable law in detail or to adjudicate the merits of the controversy, as we are dealing with an order granting interim relief only. It is sufficient for present purposes to hold, as we do, that the District Court was not clearly erroneous in the view it took of the testimony and in issuing the injunction against post-election picketing,

Store Employees Union Local No. 692, AFL-CIO, hereby withdraws any demands for collective bargaining representation for the Irvin Store employees. Our Union does not intend to request recognition, nor will we accept recognition until the majority of the employees indicate their desire to be represented by our Union.

"However, due to your conduct and that of your supervisors, agents, and representatives threatening, coercing and intimidating your employees, our Union feels that it is obligated to the Balti-

more Labor movement and the people of this city to inform them of your anti-union position. Labor-hating and labor-baiting are things of the past, our Union plans to advertise to the public what we consider your reprehensible anti-union position.

"We once again reiterate—we are not requesting nor will we accept recognition as the collective bargaining representative of your employees, until a majority indicate their desire to be represented by our Local Union."

in order to preserve the *status quo* pending final disposition of the charges before the Board. On the record as a whole there was a sufficient basis for the conclusion that an object of the post-election picketing was to force or require recognition or organization, as forbidden in Section 8(b) (7) (B).

Affirmed.